IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAVEED ATTIQUE QAMAR,
    Plaintiff,

vs.                                    Case No.:  5:12cv1/RS/EMT

CENTRAL INTELLIGENCE AGENCY, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (doc. 1).  Leave to proceed in forma pauperis has been granted.  Upon review of the complaint, the court concludes that dismissal of this case is warranted.

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Within the former are those cases in which it is either readily apparent that a complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit; within the latter are those cases describing scenarios clearly removed from reality.  Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990) (citing Neitzke, 490 U.S. at 327). Upon review of the complaint, the court concludes that Plaintiff's claims are frivolous.

Plaintiff was an inmate at the Bay County Jail ("Jail") at the time of the events giving rise to this action (*see* doc. 1 at 3–7).[1]  His complaint names the following six Defendants:  Central Intelligence Agency ("CIA"); Bay County Jail ("Jail"); Bay County Sheriff's Office; Tom Webber, a former officer with the Panama City Beach Police Department; Dr. Ronald D. Lippmann, a doctor at the Jail; and James Lee Spann, Plaintiff's former cellmate at the Jail (*id*. at 1, 2).  Plaintiff asserts he was arrested in January of 2010 and taken to the Jail (*id*. at 3).  Upon Plaintiff's arrival, a nurse observed that he was in "bad shape" and directed the officer to take Plaintiff to the hospital (*id*.).  A doctor at the hospital prescribed medications to treat Plaintiff's drug withdrawal symptoms (*id*.).  Plaintiff states he was also taking Neurontin for Raynaud's disease (*id*.).[2]  Plaintiff was released from the hospital to the Jail, but the Jail nurse would not permit Plaintiff to take his prescribed medications until he saw a Jail doctor (*id.*).  Plaintiff states he had a "string of seizures" (*id.* at 3).

Plaintiff alleges for the following nine days, he was "enhanced interrogated" (doc. 1 at 4–7).  He states he was taken to "A pod" and placed into a room in the corner of the pod with Defendant Inmate Spann, who was acting strangely (*id*.).  Plaintiff states he was not provided a mattress, and in his "weakened" state, he allowed Inmate Spann to convince him to sleep on the floor (*id*.).  Plaintiff states he later realized that Spann and the Jail guards intended that Plaintiff would sleep on the floor so that he would see "the deplorable acts" Inmate Spann was going to do (*id*.).  Plaintiff states he fell asleep and was awakened by two people dressed as guards, one was Defendant Webber, a former officer with the Panama City Beach Police Department, and the other was a 200-pound female guard with black hair (*id*. at 4–5).  Plaintiff states he slipped in and out of a coma, and at one point the lights went dim and he heard cell doors closing, but his did not close (*id.* at 5).  He states he heard Inmate Spann talking with the female guard, but Plaintiff did not know what they were saying (*id.* at 4, 5).  Plaintiff then heard Defendant Webber and the female guard call his name and tell him to take a shower in the middle of the night (*id*.).  He then recalls Inmate Spann was on the top bunk pretending to masturbate with a phallic object, obviously trying to torment him (*id.*).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

[2] Raynaud phenomenon is defined as "a spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold."  Stedman's Medical Dictionary, Phenomenon, Raynaud phenomenon (27th ed. 2000).

Plaintiff states Spann looked down at him and told him he was going to summon the female guard (*id.*). Plaintiff states the two guards told other inmates to go to Plaintiff's cell door and threaten to rape him (*id.*). He states he was raped at some point during the night; he states he was barely conscious but felt someone or something penetrate his anus (*id.*). When he "came to," he saw the female guard and a male guard standing in the doorway, speaking in a very polite manner (*id.* at 5). Plaintiff states the female guard mentioned contraband, but Plaintiff did not know what she was talking about, and passed out (*id.* at 5, 7). Later, the female guard returned to the cell, asked the other guard if he "had what he needed," and grabbed a baggie from the floor next to Plaintiff (*id.*). Plaintiff states after the guards left, Inmate Spann told him he was "bringing in a hot load" and was angry at Plaintiff (*id.*). Plaintiff states he was raped in order to plant evidence in his anus (*id.* at 5). He states later in the night, he heard sounds of jail doors closing over and over again (*id.*).

Plaintiff additionally states he "came to" from a "shot" in a medical room (doc. 1 at 5). He states Defendant Dr. Lippmann asked him questions and advised him he had crack cocaine in his system and had a string of seizures (*id.* at 3, 5). Plaintiff states he never took crack and alleges he was drugged with it (*id.*). Plaintiff states he told Dr. Lippmann he was suicidal (*id.* at 5). Plaintiff was then moved to "Challenger," where guards checked his rectum for unknown reasons (*id.* at 5–6). He states he was provided a smock which was too small and told to sleep on the floor (*id.* at 6). When he awoke from his "sleep like coma," he heard screaming from other inmates implying he had done something he did not do (*id.*). Plaintiff states this is a known tactic of CIA "enhanced interrogations" (*id.*). Plaintiff states it was very cold, and the guards wore jackets, another tactic of CIA enhanced interrogation (*id.*). Plaintiff states a man, not wearing a guard uniform, brought him a power of attorney for his mother, which he refused to sign (*id.*). Plaintiff states nurses repeatedly gave him shots of unknown drugs, none of which were documented in his medical records (*id.*). He states he was moved to another cell, and on the bottom of the cell door was written "Obama boy" with an arrow pointing to where he was told to lie down (*id.*). He states this could not have been written by an inmate, because inmates are not allowed to use Sharpie pens (*id.*). Plaintiff states Dr. Lippmann told him he was going to give him truth serum, another tactic used by the CIA (*id.* at 3, 6). Plaintiff states at one point, "they" placed a man into the cell next to his and gave the man an earpiece "that fit in the ear from a box" (*id.* at 6). Later, he heard Dr. Lippmann's voice threatening

to rape him with different objects and threatening to give him an enema (*id.* at 4, 6). He states while he was incapacitated from a shot, "they" tried raping him with what felt like pill bottles (*id.*). He states "they" played loud music over a loud speaker, another tactic used by the CIA (*id.* at 6). Then "someone" spoke through the loudspeaker with "a lot of reverb sound effect," saying the word "trip" over and over, in an attempt to convince Plaintiff he was "tripping," so that his story would sound unbelievable when he reported it (*id.* at 6–7). Plaintiff states he continued to hear talking and screaming from two female guards (*id.* at 7). He states through the intercom in his cell, he heard two of his "former managers" saying he should be killed (*id.*). Plaintiff states the only telephone call he was allowed to make was through a portable phone placed in his cell (*id.*). He states he used the telephone to call state troopers, but was only able to leave a message on an answering machine (*id.*). Plaintiff states he later learned that his experience was similar to others who have been through the CIA's enhanced interrogation (*id.*). He submitted a Freedom of Information Act ("FOIA") request to the CIA, but the CIA responded that classified documents are exempt from disclosure under the FOIA (*id.*).

Plaintiff claims Defendants' conduct violated the Eighth and Fourteenth Amendments (doc. 1 at 8). He additionally claims Defendants violated federal statutes, including "Title 18 chapter 113C," which criminalizes torture committed outside the United States, *see* 18 U.S.C. §§ 2340–2340B, and "Title 18 chapter 109A," which criminalizes sexual abuse of any person detained in a prison or institution at direction of, or pursuant to an agreement with, the head of any federal department or agency, *see* 18 U.S.C. §§ 2241–2246 (*id.*). Plaintiff also claims violations of Florida law and several treaties, including the Geneva Convention, UN Convention Against Torture, International Covenant on Civil and Political Rights, and the Nuremburg Code (*id.*).

As relief, Plaintiff seeks participation in the Medicaid program to help pay for treatment for post-traumatic stress disorder (doc. 1 at 8). He also seeks release of all CIA classified documents pertaining to programs in which he knowingly or unknowingly participated (*id.*). Plaintiff additionally seeks prosecution of the individuals and groups that committed the crimes against him, and financial restitution (*id.*).

The allegations set forth in the instant complaint appear to fall into the category of cases describing scenarios clearly removed from reality. <u>Sultenfuss</u>, 894 F.2d at 1278 (citing <u>Neitzke</u>, 490

U.S. at 327). In Neitzke, the Supreme Court recognized the ability of the court to dismiss a case as frivolous where the claims describe fantastic or delusional scenarios. 490 U.S. at 327. Although the initial assessment of Plaintiff's factual allegations must be "weighted in favor of the plaintiff," the court is not required to accept allegations as having an arguable factual basis simply because they cannot be rebutted by judicially noticeable facts. Denton, 504 U.S. at 31. In other words, the frivolity determination cannot serve as a factfinding process for the resolution of disputed facts. *Id.* A finding of frivolousness is appropriate, however, where the factual allegations are irrational or wholly incredible. *Id.*[3]

With this standard in mind, Plaintiff's complaint should be dismissed as frivolous because the claims set forth fantastic scenarios. Plaintiff's assertions of "enhanced interrogation" by jail personnel on behalf of the CIA, and jail personnel's administering medication for the purpose of raping him, or knowingly causing other inmates to rape him, so that evidence could be planted in his anus, fall into the very narrow category of allegations that are wholly incredible. Plaintiff's admitted drug withdrawal and state of limited consciousness during most of the nine-day period involved, together with the fantastic nature of his allegations, render his complaint factually frivolous.

Accordingly, it is respectfully **RECOMMENDED**:

1. That this cause be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i); and

2. That the clerk be directed to close the file

At Pensacola, Florida this 23rd day of February 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] In Denton, an inmate alleged that he was drugged and homosexually raped a total of 28 times by inmates and prison officials at various institutions. With few exceptions, the alleged perpetrators were not identified, because the inmate did not claim any direct recollection of the incidents. Rather, he asserted that he found needle marks on different parts of his body, and fecal and semen stains on his clothes, which led him to believe that he had been drugged and raped while he slept. 504 U.S. at 27–28.

Case No: 5:12cv1/RS/EMT

Page 6 of 6

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**