IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAVEED ATTIQUE QAMAR,
    Plaintiff,

vs.                                        Case No.: 5:12cv1/RS/EMT

BAY COUNTY SHERIFF'S OFFICE, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff Javeed Attique Qamar's ("Qamar") Second Amended Complaint (doc. 36). Leave to proceed in forma pauperis has been granted (doc. 4).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

I.    BACKGROUND AND PROCEDURAL HISTORY

    Qamar, proceeding pro se, commenced this action on January 4, 2012, by filing a complaint under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) (doc. 1). He named six Defendants: Central Intelligence Agency ("CIA"); Bay County Jail ("Jail"); Bay County Sheriff's Office; Tom Webber, a former officer with the Panama City Beach Police Department; Dr. Ronald D. Lippmann, a doctor at the Jail; and James Lee Spann, Plaintiff's former cellmate at the Jail (*id*. at 1, 2).[1] Qamar complained that Defendants engaged in misconduct that violated principles governing the treatment of individuals in the Geneva Convention, the United Nations Convention Against Torture, the International Covenant on Civil and

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Political Rights, and the Nuremberg Code; his rights under the Eighth and Fourteenth Amendments; federal laws prohibiting torture and sexual abuse, *see* 18 U.S.C. §§ 2340A, 2241–44; and Florida law, *see* Fla. Stat. §§ 777.04, 794.011, 794.027, 950.09 (*id.* at 3–6). Qamar alleged that a nurse and Jail officials denied him access to medications prescribed by physicians to treat his Raynaud's Disease and the symptoms of his drug withdrawal, and he later suffered a "string of seizures" (*id.*). He also alleged Defendants engaged in a conspiracy to drug, rape, and torture him; subjected him to "enhanced interrogations"; planted drugs on him; and gave some of his former acquaintances improper "access[ ] [to] the Jail" (*id.*). Qamar alleged Defendants tortured him by convincing him to sleep on the floor in order to watch Spann pretend to masturbate; allowing him to be raped in order to "plant evidence anally on [him]"; injecting him with crack cocaine; allowing Webber to enter Qamar's cell dressed as a Jail officer; giving an inmate housed in the next cell an "earpiece that fit in the ear from a box" that projected "Dr. Lippman's voice threatening to rape [Qamar] with different objects"; subjecting him to constant talking and yelling between two female officers; and allowing a "former manager" to tell Qamar through the intercom in his cell that he should be killed (*id.*). Qamar described his condition at times as being "bar[el]y conscious" and "slip[ping] in and out of [a] coma," and he recalled being told that he had crack cocaine in his system (*id.*).

Qamar alleged that the CIA was involved in the conspiracy to mistreat him (doc. 1). He identified three reasons why he thought the CIA was "involved" in his mistreatment: (1) he was given injections; (2) the CIA denied his request for information under the Freedom of Information Act "on the basis that classified information is exempt"; and (3) the Jail employed "known tactic[s] of [the CIA] [in] enhanced interrogations" (*id.*). Qamar alleged that the "tactic[s]" used by Defendants involved giving him injections; threatening to give him an enema; providing a false reason for his arrest; allowing inmates to ask him "questions implying that [he] was responsible for things [he] [had] never done"; housing him in a cell kept extremely cold; threatening to give him truth serum; and playing through the loudspeaker some music with a "reverb sound effect saying [repeatedly] the word trip" (*id.*).

The district court, upon recommendation of the undersigned, dismissed Qamar's complaint as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), because his factual allegations described a scenario clearly removed from reality (docs. 5, 10). Qamar appealed the decision to the Eleventh

Circuit Court of Appeals, and the appellate court affirmed in part, vacated in part, and remanded as follows:

> The district court did not abuse its discretion when it dismissed as frivolous Qamar's complaints involving enhanced interrogation, torture, rape, the administration and false planting of drugs, and the admission of non-authorized individuals inside the jail. A court may dismiss a complaint as frivolous when the facts alleged "rise to the level of the irrational or wholly incredible" or lack an "'arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 33, 112 S. Ct. 1728, 1734, 118 L. Ed. 2d 340 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327–28, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989)). The district court was entitled to find that Qamar's factual allegations were fantastical and implausible, particularly in the light of his admissions about being unconscious; denied access to medication used to treat the symptoms of drug withdrawal; and under the influence of crack cocaine. Qamar alleged that the Central Intelligence Agency was involved in his mistreatment, but Qamar failed to explain why the Agency would intervene in the operations of a county jail or have any interest in Qamar. Qamar alleged that he was raped and that jail guards were present before and after the rape, but it is impossible to determine from his complaint who he thought committed the offense and whether he was alleging that the guards sexually assaulted him or were deliberately indifferent to the risk that inmates would assault him. Qamar's allegations that he was raped for officials to plant evidence of drugs and that he was mistreated as a form of enhanced interrogation by the Agency are incredible.
>
> But the district court abused its discretion when it dismissed as frivolous Qamar's complaint about being denied access to his medication. Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment, and prison officials act with deliberate indifference if they knowingly interfere with treatment prescribed by a physician. Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir.1988). Qamar's allegations that he was denied access to medications prescribed by his physicians were plausible. Qamar alleged that a "nurse in intake" refused to administer his prescription medication until he was seen by a doctor; the "jail medical report and . . . doctors own words" suggested he would suffer a seizure without the medicine; and he suffered a "string of seizures" before he met with Dr. Lippmann. We **VACATE** that part of the order that dismissed Qamar's complaint about his medication.

Qamar v. C.I.A., 489 F. App'x 393, 395–96 (11th Cir. 2012) (unpublished). Qamar sought certiorari review of the Eleventh Circuit's decision in the United States Supreme Court, but the Court denied the petition (*see* doc. 42). Qamar v. C.I.A., 133 S. Ct. 942 (2013) (Mem).

Upon remand to the district court, the court directed Qamar to file an amended complaint (doc. 25). Qamar did so (doc. 32); however, upon review of the amended complaint, pursuant to 28 U.S.C.

§ 1915(e)(2), the court determined that the facts as presented failed to state a claim for relief as to one or more of the named Defendants (doc. 34). The court therefore directed Qamar to file a second amended complaint (*id.*). Qamar did so (doc. 36); however, upon review of the second amended complaint, the court determined that the facts still failed to state a claim for relief (doc. 38). The court therefore directed Qamar to file a third amended complaint (*id.*). After granting Qamar's several requests for an extension of time to comply with the court's order (*see* docs. 40, 41, 44, 45, 47, 48), Qamar has now advised the court that he "can no longer amend my complaints," due to his pro se status; and he requests that the court "rule fairly and quickly" on his "previous complaints" (doc. 51).

In Qamar's Second Amended Complaint (doc. 36), which is the operative pleading, he names four Defendants: Bay County Sheriff's Office; Tom Webber, a former investigator with the Panama City Beach Police Department; Dr. Ronald Lippmann, a doctor at the Bay County Jail ("Jail"); and James Lee Spann, an "informant" (*id.* at 1, 2, 5). Qamar alleges that when he was transferred to the Jail (presumably upon his arrest), a nurse at the Jail saw that he was "in bad shape" and instructed the "transferring officer" to take him to the hospital (*id.* at 3). Qamar alleges a doctor at the hospital prescribed Librium, a benzodiazepine, to treat symptoms of drug and alcohol withdrawal (*id.* at 3–4). Qamar alleges he was returned to the Jail and told the nurse he had been prescribed medication to treat withdrawals, and he had been prescribed Neurontin to treat Raynaud's disease (*id.*). He alleges the nurse responded that she did not care, and that Qamar would not receive his medications until he saw the doctor, pursuant to Jail policy (*id.*). Qamar alleges Dr. Lippmann withheld the Librium to prevent Plaintiff from losing consciousness, and instead administered Dilantin and Tegretol to prevent seizures, as well as Clonidine (*id.* at 4). Qamar alleges Defendants Webber and Spann observed that his condition had deteriorated but did not inform medical personnel until after Qamar suffered a seizure (*id.* at 5). Qamar alleges he suffered a string of seizures (*id.* at 3–5). He states two weeks later, he and Dr. Lippmann discussed reducing the medication (*id.* at 4). He alleges "it was understood" that the medication would be gradually decreased, but Dr. Lippmann immediately stopped the medications based on his belief that Qamar had requested that the medications be stopped (*id.*). Qamar states he suffers from post-traumatic stress disorder as a result of Defendants' deliberate indifference to his medical needs (*id.* at 3).

Qamar claims Defendants violated his Eighth Amendment right to adequate medical treatment (doc. 36 at 3–6). He additionally claims they violated 18 U.S.C. § 242 and Florida's "Marchman Act," Florida Statutes § 397.301, *et seq.* (*id.*). As relief, he seeks monetary damages (*id.* at 6).

II.     STANDARD OF REVIEW

Because Qamar is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke, 490 U.S. at 325. Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton, 504 U.S. at 31. Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Qamar. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

III.  ANALYSIS

Qamar's claims under 18 U.S.C. § 242 are frivolous, as that statute is criminal in nature and does not create a private right of action. *See* Rockefeller v. United States Court of Appeals Office, for Tenth Circuit Judges, 248 F. Supp. 2d 17 (D.D.C. 2003) (there is no private right of action under federal criminal statutes, proscribing deprivation of rights under color of law); Figueroa v. Clark, 810 F. Supp. 613 (E.D. Pa. 1992) (statutes establishing criminal liability for certain deprivations of civil rights do not give rise to civil cause of action); Powell v. Kopman, 511 F. Supp. 700 (S.D.N.Y. 1981) (section 242, which is the criminal analogue to section 1983, does not create a private right of action); Purk v. United States, 747 F. Supp. 1243 (S. D. Ohio 1989) (same).

Additionally, Qamar's allegations fail to state an Eighth Amendment claim against any Defendant. Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended,

"pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")) (emphasis added).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta Cnty., 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson Cnty., 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, Qamar concedes Dr. Lippmann substituted Dilantin and Tegretol, both of which are anti-seizure medications, for the Librium. The fact that Dr. Lippmann's treatment regimen differed from another doctor's does not suggest Dr. Lippmann was deliberately indifferent to Qamar's serious medical needs. Likewise, the fact that Qamar and Dr. Lippmann had a misunderstanding or

disagreement regarding the medications or dosage levels does not suggest Dr. Lippmann acted with culpable intent to consciously disregard Qamar's serious medical needs.

With regard to Defendants Webber and Spann, Qamar's general allegation that they "could visually see my deterioration" but did not notify medical personnel of his condition until he had a seizure, is insufficient to suggest they subjectively knew he would have a seizure, or that his condition otherwise required immediate medical attention. Further, when the severity of his condition became evident, Qamar admits Spann and Webber notified medical personnel. At most, Qamar's allegations suggest that their failure to act sooner was negligent.[3]

The court previously advised Qamar that unless he amended his complaint with sufficient facts suggesting deliberate indifference by Defendants, his claims would be subject to dismissal (*see* doc. 38). Qamar has declined the opportunity to amend his allegations (*see* doc. 51). Because his allegations fail to state a claim upon which relief can be granted as to Defendants Lippmann, Spann, and Webber, his claims against those Defendants should be dismissed.

Qamar also failed to state a basis for liability as to the Bay County Sheriff's Office. Initially, the Bay County Sheriff's Office is not a proper party to this proceeding. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). In Florida, there is no such legal entity as the "Bay County Sheriff's Office." Under Florida law, there are constitutionally created

---

[3] Qamar's claim against Defendant Spann is subject to dismissal on the additional ground that his factual allegations fail to plausibly suggest he was a state actor for purposes of liability under section 1983. A private person is considered a state actor if the state coerced or "significantly encouraged" the private person to act, the action was traditionally performed by a state official, or the state was a joint participant in the action. *See* Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). Here, Qamar alleges only that Spann was "an informant" (doc. 36 at 5). This fact, alone, does not convert Spann's conduct into state action. *See* Ghandi v. Police Dep't of City of Detroit, 823 F.2d 959, 963 (6th Cir. 1987) (declining to adopt a per se rule that paid informants always act under color of state law) (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982)). Further, Qamar's complaint includes no facts suggesting a nexus between Spann's informant activities and the activities of medical personnel at the Jail. *See, e.g.,* Hiser v. City of Bowling Green, 42 F.3d 382, 383–84 (6th Cir. 1994) (police informant, who stole check from person with whom he shared apartment and then killed her, was not acting under color of state law to be liable as state actor under § 1983, where his informant activities were limited to obtaining evidence against drug dealers); Norris v. Schauman, 3:13-CV-00542, 2013 WL 3224346, at *3 (M.D. Tenn. June 25, 2013) ("Federal courts may find informants to be acting under color of state law for § 1983 purposes if the informant acts in an investigatory capacity at the direction of or under the supervision of governmental authorities and if there is a nexus between the informant's activities and the activities of the authorities themselves.") (internal quotations and citation omitted).

political subdivisions called counties and separately created constitutional officers, including a sheriff. Fla. Const. art. VIII, §§ 1 (a) and (d). However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name. *See, e.g.*, Bethel v. Escambia County Sheriff's Office, No. 3:05cv376/MCR/MD, 2006 WL 839184, at *1–2 (N.D. Fla. Mar. 30, 2006) (dismissing Escambia County Sheriff's Office from § 1983 suit on grounds that it is not a suable entity); Erickson v. Hunter, No. 95-387-CIV-FTM-17D, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued). Inasmuch as the Bay County Sheriff's Office is not a suable entity under Florida law, Qamar has failed to state a claim against it.

Additionally, even if the court liberally construes the complaint as naming the Bay County Sheriff in his official capacity, for purposes of establishing municipal liability, *see* Mitchell v. Untreiner, 421 F. Supp. 886, 888 (N.D. Fla. 1976) (referring to Sheriff of Escambia County, Florida as "the Chief Jailer of the Escambia County Jail"), there is no vicarious liability under section 1983. Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (the doctrine of respondeat superior has clearly been rejected as a theory of recovery under section 1983); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory" for the actions of its employees). Section 1983 liability against the municipality may be imposed only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.*, 436 U.S. at 694; *see also* Quinn v. Monroe Cnty., 330 F.3d 1320, 1325 (11th Cir. 2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb Cnty. School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). To hold the municipality liable, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Snow ex rel. Snow v. City of Citronelle, AL, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting City of Canton v. Harris, 489 U.S.

378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). More specifically, to impose § 1983 liability on a municipality, Plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing Canton, 489 U.S. at 388).

In the instant case, Qamar alleges his seizures were caused by the Jail's policy of prohibiting the intake nurse from dispensing medication to him, a newly booked inmate, until a doctor examined him. However, this conclusory allegation is insufficient to establish a basis for municipal liability under section 1983. Qamar has not alleged facts sufficient to establish the second McDowell prong; more specifically, he has not shown that the Jail's policy constitutes deliberate indifference to incoming jail detainees' constitutional rights. For example, the policy reflects no subjective intent to punish; nor does it result in a complete denial of medical care. Qamar's own allegations establish that Jail policy permits intake nurses to refuse to accept incoming inmates who are in "bad shape" or in immediate need of a physician's care, such as Qamar upon his initial arrival at the Jail, and instead direct that they be hospitalized. Thus, even though the Jail's intake nurses may not be authorized to immediately dispense prescription medications to a new inmate, they may refer the inmate for immediate medical attention when that inmate displays an objectively serious medical need that cannot wait for examination by the Jail's physician. Accordingly, Qamar's allegations are insufficient to state a basis for municipal liability. *See* Calhoun v. Ramsey, 408 F.3d 375, 381 (7th Cir. 2005) (finding no liability with regard to a jail policy that impeded a detainee's access to medication where detainee could not "point to any language in the jail's policy that is constitutionally suspect" or "provide enough evidence of custom and practice to permit an inference that the County has chosen an impermissible way of operating" or that the policy at issue "was so inadequate as to amount to an Eighth Amendment violation"); King v. Kramer, 680 F.3d 1013, 1021 (7th Cir. 2012) ("We have previously said that a municipality would violate the Eighth Amendment under Monell if it had a policy requiring jail staff to throw away all prescription medications without implementing an appropriate mechanism for providing alternative treatment.") (citing Calhoun, 408 F.3d at 379–80); Breen v. Pendergraph, 3:05cv148, 2007 WL 4591868, at *8 (W.D.N.C. Dec. 28, 2007) (jail policy requiring verification of outside medications by jail physician—which policy "was created to ensure

the health and safety of all inmates, including those inmates who bring unidentified pills or medication to the facility"—does not result in a complete denial of access to medications and reflects the jail's "legitimate interests . . . in controlling and administering medications within the [j]ail); *see also* Garcia v. County of Bucks, 155 F. Supp. 2d 259 (E.D. Pa. 2001) (finding no deliberate indifference to inmate's medical needs where jail officials confiscated his diabetes medication upon his arrival at jail, noting that prison "authorities universally confiscate medications from new inmates," and recognizing legitimate interest in controlling the prescription and administration of medication to persons in their custody) (internal quotations and citation omitted).

Finally, with regard to Qamar's state law claims for alleged violations of Florida's "Marchman Act," Florida Statutes § 397.301, *et seq.*, it is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the undersigned concludes that Qamar's state law claims should be dismissed to permit him to pursue them in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B).

    2.      That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court.

    3.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 30th day of August 2013.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**